UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PLAISTOW PROJECT, LLC,

    Plaintiff,

v.

ACE PROPERTY & CASUALTY
INSURANCE COMPANY,

    Defendant.

Civil Action No. 16-cv-11385-IT

MEMORANDUM & ORDER
September 13, 2018

TALWANI, D.J.

After considering the Magistrate Judge's Report and Recommendation on Plaintiff's Motion for Partial Summary Judgment as to Liability and Defendant's Cross Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 ("R&R") [#71], to which Plaintiff has filed no objections, and considering *de novo* Defendant ACE Property and Casualty Insurance Company's Objections to Report and Recommendation ("Def.'s Obj.") [#73], and Plaintiff Plaistow Project, LLC's Memorandum in Response [#77], the court hereby ACCEPTS and ADOPTS the Report and Recommendation [#71] for the reasons set forth therein and below. Specifically, Plaintiff's Motion for Partial Summary Judgment as to Liability [#46] is GRANTED as to Defendant's breach of its duty to defend its insured, State Line Laundry Services, and DENIED as to Defendant's potential breach of the duty of good faith and fair dealing, and Defendant's Cross Motion for Summary Judgment ("Def.'s Cross-Mot.") [#52] is DENIED.

1. <u>Defendant's Objections as to Plaintiff's Motion for Partial Summary Judgment as to the Duty to Defend Claim</u>

Defendant does not dispute that, as a general matter, an insurance company's duty to defend is broader than its duty to indemnify, and that if the allegations of the complaint are reasonably susceptible of an interpretation that they state or adumbrate a claim covered by the policy terms, the insurer must undertake the defense, at least until a court determines that no potential for coverage exists. <u>See</u> R&R at 14 and cases cited therein [#71]. Defendant also does not disagree that under this general rule the allegations in the complaint containing general allegations of negligent releases would be reasonably susceptible of an interpretation that they state or adumbrate a claim of "sudden and accidental" release falling under the exception to the pollution exclusion. Defendant argues, however, that the Magistrate Judge should have applied a different rule because the claim involves the "sudden and accidental" exception. Def.'s Obj. at 11-14 [#73]. In Defendant's view, in such cases, where a complaint contains general allegations of negligent releases, the insured has the burden of proving coverage for the duty to defend to apply, and the Magistrate Judge misinterpreted or ignored precedent in rejecting this argument. <u>Id.</u> The Magistrate Judge's analysis was correct.

Defendant relies heavily on <u>Great Northern Industries, Inc. v. Harford Accident & Indemnity Co.</u>, 666 N.E. 2d 1320 (1996). Defendant asserts that "the allegations at issue in <u>Great Northern</u> were general, nonspecific assertions that the insured was responsible for contamination" and that the Massachusetts Appeals Court "unambiguously held that the burden of proof on the 'sudden and accidental' exception is on the insured with respect to both the duty to defend and the duty to indemnify." Def.'s Obj. at 11-12 [#73]. But the assertions against the insured were quite specific, namely, that the insured had shipped 132 drums of solvent waste to the reclamation site. 666 N.E. 2d at 1321. It was against the backdrop of the assertions that the

insured had disposed of solvent waste in this manner that the court noted that "[a]t no place in the present record was a contention made or supported that any relevant release was of that character" – sudden or accidental. Id. at 1322.

The Appeals Court's subsequent reference to burden-shifting is in no way "unambiguous" as Defendant contends. The Appeals Court, after stating that no such "sudden or accidental" contention had been made, opined that such a contention "if it was to be made at all, apparently must be made and proved by the insured as part of its burden of establishing coverage," id. at 1322, without specifying whether such coverage was as to the duty to defend or the duty to indemnify. As authority for this "apparent" conclusion, the Appeals Court relies on several federal cases that offer little support for the conclusion that the purported burden-shifting applies to a duty to defend case where the claims against the insured contain general allegations of negligent releases that are reasonably susceptible of an interpretation that they state or adumbrate a claim of "sudden and accidental" release.[1]

Defendant's reliance on the Appeals Court's decision in Great Northern as to the duty to defend is further undermined by prior and subsequent decisions of the Massachusetts Supreme

---

[1] See A Johnson & Co. v. Aetna Cas. & Sur. Co., 741 F.Supp. 298, 305-06 (D. Mass. 1990) **(as to indemnity**, "[t]he burden of establishing that the occurrence giving rise to the . . . settlement comes within the 'sudden and accidental' exception to the pollution exclusion rests with the plaintiffs," and not reaching issue as to duty to defend), aff'd 933 F.2d 66, 75 n. 14 (1st Cir. 1991) ("it appears that the insured bears the burden to establish, **for purposes of indemnification**, that this exception to the 'pollution exclusion' has been satisfied") (emphasis added); Covenant Ins. Co. v. Friday Eng'g., Inc., 742 F. Supp 708, 711 (D. Mass. 1990) (where allegations against the insured lie expressly outside the policy coverage and the insured failed to prove a "sudden and accidental " discharge, no duty to defend or indemnify). As then-Judge Botsford summarized, in each of these cases, the claims against the insured "involved direct allegations that the insured knowingly disposed of hazardous materials or contaminants as a regular part of its business operations." Rubenstein v. Liberty Mut. Ins. Co., No. 90-1687, 1991 WL 787069, at *7 (Mass. Super. Ct. Oct. 3, 1991).

Judicial Court ("SJC") addressing the burden of proof in duty to indemnify cases. In Polaroid Corporation v. Travelers Indemnity Company, 610 N.E.2d 912 (1993), the SJC held that where the duty to defend had been breached, the SJC placed the burden of proving whether the "sudden and accidental" release exception applied in duty to indemnify claims on the insurer. Highlands Ins. Co. v. Aerovox Inc., 676 N.E. 2d 801, 804 n.6 (1997) (citing Polaroid Corp., 610 N.E. 2d at 922 n.22). The SJC explained that this "determination was made irrespective of which party would normally bear that burden in the absence of a breach of the duty to defend," and that "[t]he shifting of the burden to the insurer in those cases is necessary to protect the insured because the failure to defend might make it more difficult for the insured to prove that the underlying claim falls within the insurance coverage." Id. (citing Polaroid Corp., 610 N.E. 2d at 922). One year after Great Northern, in Highlands, the SJC resolved the "open question" of who bears the burden on a duty to indemnify claim where there has been no breach of the duty to defend, finding that in that circumstance, the burden is appropriately placed on the insured. Id. at 805. The SJC explained that the policy here, as to duty to indemnify claims where there was no breach of the duty to defend, was consistent with the general rule that the insured must prove that coverage applied, absolve the insurer from bearing the burden of proving the negative and, if the burden was otherwise, "the property owner would have an incentive to avoid finding out whether pollutants are being gradually discharged." Id. Under this pair of SJC decisions, which party has the burden to prove a "sudden and accidental" release for purposes of indemnity depends on whether the insurer met its duty to defend. To suggest that an insured, faced with a complaint containing general allegations of negligent releases must first prove a "sudden and accidental" release in order to establish a duty to defend is inconsistent with these carefully crafted distinctions.

Defendant argues further that in Simplex Technologies, Inc. v. Liberty Mutual Insurance Company, 706 N.E. 2d 1135 (1999), the SJC recognized the unique burden of proof allocation in "sudden and accidental" cases. But Simplex merely reiterated the SJC's reasoning in Highlands in resolving a duty to indemnify claim.

Defendant asserts further that House of Clean, Inc. v. St. Paul Fire and Marine Insurance Company, Inc., 705 F. Supp. 2d 102, 109 (D. Mass. 2010) supports Defendant's view that State Line was obligated to provide additional information to Defendant to trigger coverage. But that decision reiterated the general rule if the allegations against an insured are "'reasonably susceptible of an interpretation that they state or adumbrate a claim covered by the policy terms, the insurer must undertake the defense'" unless the insurer demonstrates "'with conclusive effect' that the third-party cannot establish a claim within the policy. House of Clean, Inc. v. St. Paul Fire & Marine Ins. Co., 705 F. Supp. 2d 102, 107 (D. Mass. 2010) (internal citations omitted). The court there did not require any extrinsic material where a complaint sufficiently triggered a duty to defend, but stated only that additional facts known or reasonably known to the insurer that could "add substance and meaning to otherwise skeletal . . . claims" only adumbrated in the complaint could be considered in imposing a duty to defend on an insurer. Id. at 109.

In sum, on *de novo* review, Defendant's objections regarding the legal standard for imposing a duty to defend are overruled.

2. Defendant's Objection as to Plaintiff's Motion for Partial Summary Judgment as to the Good Faith and Fair Dealing Claim

On Plaintiff's motion for summary judgment on liability as to Count II of its Amended Complaint [#33], "Breach of Implied Obligation of Good Faith," the Magistrate Judge recommended summary judgment be denied. Defendant now objects that the Magistrate Judge did not recommend dismissal of that count. Although Defendant argued in opposition to

5

Plaintiff's motion that the claim failed as a matter of law, Defendant's cross-motion [#52] did not seek dismissal of the claim. Accordingly, this objection is not properly before the court. Counsel may address at a subsequent status conference whether further motion practice is appropriate as to this claim.

3. <u>Defendant's Objection as to its Motion for Summary Judgment as to Liability on the Indemnity Claim Based on the Sudden and Accidental Discharge Exception.</u>

The Magistrate Judge recommended denial of Defendant's motion for summary judgment on Plaintiff's claim for indemnification, including as to its argument that there was no sudden and accidental discharge giving rise to an indemnity claim. Defendant objects to this recommendation, arguing that even accepting Plaintiff's claim that the contaminant at issue resulted from button trap overflows that occurred between 1982 and the end of the period during which the dry cleaning machines were used, the alleged releases were not "sudden and accidental" as a matter of law, because prior button trap overflows had occurred. As noted above, where the duty to defend had been breached, the SJC placed the burden of proving whether the "sudden and accidental" release exception applied in duty to indemnify claims on the insurer. Accordingly, to prevail on summary judgment, Defendant must prove that even accepting Plaintiff's version of events, the releases were not "sudden and accidental" as a matter of law. As the Magistrate Judge has explained and as discussed further here, Defendant fails to make this showing.

Under Massachusetts law, "sudden" must have a temporal aspect to its meaning. <u>Lumbermens Mut. Cas. Co. v. Belleville Indus., Inc.</u>, 555 N.E.2d 568, 572 (1990) ("*Belleville I*"). The alternative to "sudden" is gradual. <u>Id.</u> "[A] discharge continuing over an extended period of time would likely cease to be sudden." <u>Millipore Corp. v. Travelers Indem. Co.</u>, 115 F.3d 21, 33 (1st Cir. 1997) (citing <u>Liberty Mut. Ins. Co. v. SCA Servs., Inc.</u>, 588 N.E.2d 1346, 1350

6

(1992); see Liberty Mut. Ins. Co., 558 N.E.2d at 1349-50 ("routine business activity" in a pollution prone business "lasting over several months in which the toxic contents of the barrels brought . . . to the landfill were either emptied into open trenches or dumped into trenches and flattened with a bulldozer" were not sudden). Moreover, "'[t]he sudden event to which the exception in the pollution exclusion clause applies concerns neither the cause of the release of a pollutant nor the damage caused by the release. It is the release of pollutants itself that must have occurred suddenly, if the exception is to apply so as to provide coverage. The exception thus focuses on the circumstances of the release.'" Nashua Corp. v. First State Ins. Co., 648 N.E.2d 1272, 1275 (1995) (quoting Lumbermens Mut. Cas. Co. v. Belleville Indus., Inc., 555 N.E.2d 568 (1990)).

"Accidental" relates to expectations and intentions, and this depends on context. Thus, "minor spills and mishaps which would clearly be sudden and accidental at an 'office building housing company headquarters' would be commonplace occurrences and not 'clearly beyond the long-range reasonable expectation of the insured' at a toxic waste reclamation facility." Highlands, 676 N.E.2d at 806 n. 10 (quoting Lumbermens Mut. Cas. Co. v. Belleville Indus., Inc., 938 F.2d 1423, 1427 (1st Cir. 1991)). And a spill is not "accidental," "even if the *insured* did not intend the discharge of pollutants, . . . when the insured turned the waste over to a waste processor who intentionally discharged the pollutants." Millipore Corp., 115 F.3d at 33 (quoting Polaroid Corp., 610 N.E.2d at 915–16) (emphasis in original).

According to the Affidavit of Peter Simon, which Defendant accepts for purposes of this motion, the dry cleaning machines would circulate perchlorethlene to perform their dry cleaning function. On no more than six occasions between 1971 and the early 1980s, after customers cleaned items that were not permitted to be placed in the machines, the "button-trap" clogged,

7

and perchlorethlene spilled and puddled on the floor. Accepting this affidavit as true for purposes of summary judgment, these releases occurred suddenly, not gradually, and thus were "sudden" for purposes of the exception.

Defendant argues that even if the first spill (which apparently occurred prior to the coverage period) was both sudden and accidental, the subsequent spills cannot be considered "sudden and accidental." Defendant relies on House of Clean, Inc. v. St. Paul Fire and Marine Insurance Co., Inc., 775 F. Supp. 2d 302 (D. Mass. 2011). In that case, the insured's "routine practice" was to store the hazardous material "in cardboard boxes in the basement," even after experiencing basement flooding. Id. at 312. The insured knew the boxes would get wet and leak pollutants whenever the basement flooded, which occurred three to five times per year by one estimate, and "every time it used to rain hard," or between five and ten times per year by another estimate. Id. at 313. The court concluded that after the first flood, the insured's "continued practice of storing PCE in the same manner for 16 years was intentional," and that "he knew that the storage of PCE in cardboard boxes in the flood-prone basement would result in pollution during heavy rain storms." Id. at 312. In that case, the release "resulted from a regular business practice," and the resulting pollution was not accidental. Id. at 314.

Here, in contrast, the five or six spills over twelve years cannot be considered "common." Nor were the releases intended by the insured, or the result of the insured's regular business practice. Instead, according to the Affidavit, Simon sought to stop such the overflows by directing the customers not to place items in the machines that would clog the button-trap, and the releases occurred only as a result of the customer's misuse of the machines. Accepting the Affidavit as true for purposes of summary judgment, the court cannot find that Defendant has met its burden of establishing that the releases were not sudden and accidental.

4. Defendant's Remaining Summary Judgment Arguments

Defendant also argued on summary judgment that any indemnity liability should be limited based on a "double trigger" in the insurance policies which Defendant contends bars coverage for any earlier releases, and "under allocation principles." Def.'s Cross-Mot. at 2 [#52]. The Magistrate Judge recommended that the court deny summary judgment, noting among other things that there was no need to resolve at this juncture legal issues that the court may not need to reach. R&R 31, 32 [#71]. Defendant objects, asserting that these are legal issues as to which there are no disputed facts, and that "nothing prevents the Court from ruling" on such issues.

Defendant sought summary judgment, not partial summary judgment, and the court agrees with the Magistrate Judge that resolving subsidiary legal issues on this record is unnecessary. That said, the court does not disagree that resolution of the legal framework in advance of trial will aide in resolving this dispute, whether that occurs through settlement or at trial. Accordingly, the court will address at a subsequent status conference how best to address these legal questions, including through proposed jury instructions.

5. Conclusion

Accordingly, after considering the Magistrate Judge's Report and Recommendation on Plaintiff's Motion for Partial Summary Judgment as to Liability and Defendant's Cross Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 [#71], to which Plaintiff has filed no objections, and considering *de novo* Defendant ACE Property and Casualty Insurance Company's Objections to Report and Recommendation [#73], and Plaintiff Plaistow Project, LLC's Memorandum in Response [#77], the court hereby ACCEPTS and ADOPTS the Report and Recommendation [#71] for the reasons set forth therein and above. Specifically, Plaintiff's Motion for Partial Summary Judgment as to Liability [#46] is GRANTED as to Defendant's

breach of its duty to defend its insured and DENIED as to Defendant's potential breach of the duty of good faith and fair dealing, and Defendant's Cross Motion for Summary Judgment [#52] is DENIED. The clerk shall set the matter for a status conference.

    IT IS SO ORDERED.

Date: September 13, 2018                                                  /s/ Indira Talwani
                                                                                          United States District Judge